IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTT RABIN,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )
                                      )   No. 09 C 8049
COOK COUNTY, et al.,                  )
                                      )
          Defendants.                 )
                                      )
                                      )
                                      )

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Scott Rabin sued Officers Flynn, Knepper, and Quinlan, Cook County and Cook County Sheriff Thomas Dart for violations of 42 U.S.C. § 1983 along with various state law claims. Defendants have moved for summary judgment, purportedly on all claims,[1] while plaintiff has moved for partial summary judgment on Counts II and III against Flynn, Knepper and Quinlan. For the reasons that follow, both motions are granted in part and denied in part.

**I.**

The majority of the facts in this matter are not in dispute. On December 14, 2009, plaintiff was self-employed as a private detective. Plaintiff's duties include serving process and doing

---

[1] Defendants presented no argument for summary judgment on plaintiff's state law battery claim. Thus, this opinion does not address that claim.

investigative work for lawyers and law firms. Plaintiff was previously employed as a Chicago Police Officer from 1987 to 1997. On December 14, 2009, plaintiff went to 750 West Lake Cook Road to serve an "Order Appointing Receiver" at that location. Deputy Flynn, who was assigned to the Civil Process Division for the Sheriff's Office, served process at that same location. Flynn observed plaintiff walk into the building with what appeared to be a gun holstered on his side. Flynn informed his dispatch that he observed a man with a gun walking into an office building. Plaintiff was wearing a blue shirt, a turtleneck and jeans and he had his gun holstered toward the back of his hip. As plaintiff exited the building, he had a bulge in the area where his gun and holster were located. Flynn asked plaintiff if he was armed and plaintiff admitted he was. Plaintiff told Flynn that he was a private detective and that he had a TAN card[2]. Flynn did not know what a TAN card was. Flynn contacted his dispatch to make further inquiries regarding plaintiff's TAN card.

Officers from Buffalo Grove soon arrived on the scene. Officer Knepper was assigned to Civil Process and heard over the

---

[2] A TAN card, issued by the Illinois Division of Professional Regulation, is a Firearm Authorization Card which is provided to a licensed private detective who has received mandated firearms training; the holder of the card is authorized to carry a firearm. 225 ILCS 447/35-35; *Haywood v. City of Chicago*, 378 F.3d 714, 715 (7th Cir. 2004). It is undisputed that the TAN card plaintiff received and carried on the day of the incident did not explicitly state that the holder could carry a weapon.

radio that Flynn had a man with a gun. After Knepper arrived at the scene, he observed Flynn standing next to plaintiff and asked if plaintiff was the armed man and Flynn replied yes. Knepper placed handcuffs on plaintiff. Flynn removed a handgun from plaintiff's holster. Flynn and Knepper unloaded the handgun, which was fully loaded. Plaintiff was then moved from the sidewalk area to Knepper's vehicle. Officer Quinlan also went to the scene to assist. Knepper brought plaintiff to Quinlan's squad car and plaintiff was placed in Quinlan's squad car. Plaintiff remained handcuffed in Quinlan's car for about fifteen minutes.[3] Plaintiff's handcuffs were then removed and he was placed in a Buffalo Grove squad car. Plaintiff was driven by Officer Derken to the Buffalo Grove Police Department where his credentials were photocopied and his belongings were returned to him. Plaintiff was not processed for any kind of criminal charge.

## II.

---

[3] It is undisputed that none of the officers at the scene knew what a TAN card was. Rather frustratingly, neither side provides any facts describing how the officers came to know that plaintiff was not violating any law. Defendants merely state that Officer Derken spoke to someone at the Lake County State's Attorney's Office during the incident, Defs.' 56.1 fact 76, but they give no facts relating to what transpired in that phone call. Having looked myself at Derken's deposition transcript, Derken was advised by the Lake County State's Attorney's Office that plaintiff was permitted to carry a weapon. Derkin Dep. at 45-46. After he received that information, the decision was made to release plaintiff. *Id.*

Summary judgment is appropriate if "the movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). Once the moving party shows that there is no genuine issue
of material fact, the burden of proof shifts to the nonmoving party
to designate specific facts showing that there is a genuine issue
for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

## A.   Section 1983:  False Arrest

In Count II, plaintiff asserts a § 1983 claim against Flynn,
Knepper and Quinlan for false arrest. Plaintiff alleges that his
constitutional rights under the Fourth Amendment were violated
because he was arrested without probable cause. "To prevail on a
claim of false arrest, the plaintiff must show that there was no
probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634,
638 (7th Cir. 2010). "Probable cause exists if an officer
reasonably believes, in light of the facts known to [him] at the
time, that a suspect had committed or was committing an offense."
*Id.* (quotation marks omitted). "[T]he probable cause inquiry is an
objective one; the subjective motivations of the officer do not
invalidate a search otherwise supported by probable cause."
*Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 457 (7th
Cir. 2010).

In response, defendants raise two arguments – that the arrest
was supported by probable cause or, in the alternative, that the

officers engaged in a *Terry* stop. I reject defendants' alternative argument, raised only in response to plaintiff's motion (and which appears nowhere in defendants' own motion for summary judgment), that plaintiff's detention was merely a lengthy *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). There is no bright line separating an investigative detention from a formal arrest; the distinction hinges on the intrusiveness of the detention and involves a highly fact-intensive inquiry. *See Jewett v. Ander*, 521 F.3d 818, 823 (7th Cir. 2008). As an initial matter, both sides agree that the initial stop and questioning of plaintiff was reasonable and proper, given the fact that plaintiff was carrying a concealed weapon. However, with respect to the *detention* of plaintiff, I conclude that the defendant officers' suspicion of plaintiff was objectively unreasonable. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in . . . a completed felony, then a *Terry* stop may be made to investigate that suspicion." *U.S. v. Hensley*, 469 U.S. 221, 229 (1985).

While the initial stop may have been reasonable, there quickly came a point when any continued detention was no longer reasonable. As explained more fully in the probable cause analysis, plaintiff provided the officers with all the information they needed in order to conclude that he was lawfully permitted to carry a gun. Thus, once the officers understood that plaintiff was a licensed private

detective with a TAN card, it was no longer reasonable for them to continue to detain plaintiff. Therefore, I reject defendants' argument that the detention was proper under *Terry*. Instead, I agree with plaintiff that he was arrested at the scene. To determine whether a seizure is an arrest, I look at the totality of the circumstances surrounding the seizure, focusing on the extent and duration of any restraint on the suspect's movement. *See Kaupp v. Texas*, 538 U.S. 626, 629-30 (2003). A suspect is under arrest when "a reasonable person in the suspect's position would have understood the situation to constitute restraint on the freedom of movement of the degree which the law associates with a formal arrest." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1017 (7th Cir. 2006). The cases defendants cite, which involve inherently dangerous situations and allowed for the use of handcuffs and placement in police cars, are inapposite here. It is undisputed that plaintiff was entirely compliant and cooperative during the entire detention. Plaintiff was not suspected of being involved in any inherently dangerous crimes, such as drug trafficking. Further, defendants disarmed plaintiff, so any potential threat from the weapon was eliminated. Even though plaintiff was not armed and even though he was fully cooperating and compliant, defendants nonetheless detained plaintiff in the back of two police cars and handcuffed him. Further, plaintiff's detention was not brief – he estimates the length of the stop was

6

greater than 1.5 hours from the time Flynn approached plaintiff to the time plaintiff was released from the Buffalo Grove police station. Defendants' assertion that plaintiff was "evasive" in his answers to Flynn is totally unsupported in the record. Given the circumstances and the lack of any danger to the officers or any indication that they believed plaintiff would attempt to flee, I believe that plaintiff was arrested when he was handcuffed and placed in the back of the two police cars. *See Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) (handcuffing a compliant and cooperative suspect during a *Terry* stop was deemed an arrest, especially in light of the fact that there was no basis for the officer to fear for his safety); *Maldonado v. Pierri*, No. 08 C 1954, 2010 WL 431478 (N.D. Ill. Feb. 1, 2010) (concluding the plaintiff had been arrested where police, among other things, handcuffed, searched and placed plaintiff in a police car; noting that officers "handcuffed and detained a seemingly cooperative suspect who displayed no signs of resistance.").

Next, defendants argue that Count II fails because they had probable cause to arrest plaintiff for various weapons offenses. Under Illinois law, a person commits Aggravated Unlawful Use of a Weapon "when he or she knowingly: (1) carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business . . . any pistol . . . or

7

other firearm." 720 ILCS 5/24-1.6(a)(1). In addition, the offense of Unlawful Use of Weapons provides, in relevant part, that a person commits the offense when he knowingly "carries or possesses in any vehicle or concealed on or about his person except when on his own land or in his own abode, legal dwelling, or fixed place of business . . . any pistol . . . or other firearm." 720 ILCS 5/24-1(a)(4). It is undisputed that plaintiff knowingly possessed and concealed a fully loaded handgun, and plaintiff was not in his abode, on his land or at his place of business at the time of the arrest. Anticipating plaintiff's argument concerning exemptions from these two offenses, defendants argue that once a police officer discovers sufficient facts to establish probable cause, he has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence. In addition, defendants assert that any exemption is an affirmative defense, and "the validity of an affirmative defense is irrelevant to whether or not a police officer sued for false arrest had probably cause to make an arrest." Defs.'s Mem. at 6.

Plaintiff does not dispute defendants' contention that the elements for the above-listed offenses were met. Instead, he argues that defendants lacked probable cause because he was statutorily exempt from both statutes based upon his employment as a private detective. Under Illinois law, a private detective is exempt from sections 5/24-1(a)(4) and 5/24-1.6 so long as he was

8

performing the duties of his employment and he, as evidenced by a TAN card, has completed the requisite firearms training. 720 ILCS 5/24-2(a)(5).

Defendants do not dispute that plaintiff was, in fact, entitled to carry a concealed weapon under Illinois law. When he was stopped by Deputy Flynn, plaintiff admitted he had a weapon, identified himself as a private detective and provided his credentials. Among them was a TAN card, which was documentation from the Department of Professional Regulation that he successfully completed the required firearms training and was therefore permitted to carry a firearm. Unfortunately, neither Deputy Flynn, nor the other officers at the scene, knew about the exemption or what a TAN card was.

Defendants point to *McGarvey v. Biswell*, 993 F. Supp. 1198, 1203 (C.D. Ill. 1998), to support their theory[4] that the defendants

---

[4]     Defendants also cite to *Marshall v. Walker*, 958 F. Supp. 359, 365 (N.D. Ill. 1997), as support.  *Marshall* is clearly distinguishable from this case.   In *Marshall*, police officers arrested the plaintiff for carrying a concealed firearm in a holster when the plaintiff was in the rear of a building which plaintiff owned.   Plaintiff argued that an exemption to the unlawful use statute applied to him because he was on his own land or in his fixed place of business.   The court found that the officers had probable cause to arrest the plaintiff *because it concluded as a matter of law that no exemption applied to him*. Further, the quotes from *People v. Smith*, 374 N.E.2d 472 (Ill. 1978), which defendants rely on, are taken out of context.   The *Smith* court was not addressing the factual scenario presented here (officers who have all the necessary information to determine that an exemption applies but are ignorant of the law), but rather addressed the separate issue of which party bears the burden in a criminal trial.

had probable cause to arrest plaintiff. Although defendants discuss it in the context of qualified immunity, it is instructive on the issue of defendants' probable cause to arrest plaintiff.[5] In *McGarvey*, 993 F. Supp. at 1203, plaintiffs, who were armored truck drivers, were driving a semi-tractor trailer loaded with frozen meat. Because the load they were carrying was not considered an "armored load," plaintiffs wore street clothes rather than their usual driver uniforms. Lettering on the side of the truck read "U.S. Armored/Western Distributing Company." After plaintiffs were pulled over for speeding, they provided the defendant officers with various documentation, including their drivers' licenses, the company gun permits, receipts showing they had applied for individual permits, and a copy of a federal statute entitled "State reciprocity of weapons licenses issued to armored car company crew members." After the officers uncovered weapons in the truck, plaintiffs were arrested although the weapons charges were ultimately dropped. Suing the defendant officers under §1983, plaintiffs alleged that there was no probable cause to arrest them because Illinois exempts drivers of armored cars from the relevant unlawful use statute. In addition, a federal statute mandates

---

[5] "Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions[.]" *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001).

state reciprocity for out-of-state weapons licenses issued to armored car company crew members.

The district court concluded that "officers of reasonable competence could disagree" about whether they would have exempted plaintiffs from the unlawful use statute. The court noted that some of the circumstances (the frozen meat load, the street clothes, the type of truck) made it questionable whether plaintiffs would fall within the exemption. In these circumstances, the court concluded that "[o]fficers in the field cannot be expected to make probable cause determinations as would the 'legal technicians of the prosecutor's office.'" 993 F. Supp. at 1203 (quoting *Williams v. Kobel*, 789 F.2d 463, 468 (7th Cir. 1986)). Finally, the court noted that it doubted that "the legislatures enacting the unlawful use exemptions . . . intended these provisions to deter officers from searching or making arrests in close cases. The unlawful use exemptions of 720 ILCS 5/24-2 are numerous and complex, and the Illinois courts have construed them narrowly." *Id*.

I find this case to be distinguishable from the present case. In *McGarvey*, there was ambiguity over whether or not the plaintiffs actually fit within the exemption to the weapons statutes. In that context, it makes sense to conclude that law enforcement officers were reasonable in erring on the side of arrest. There was no indication in *McGarvey* that the police officers were unaware of the armored truck driver exemption to the Illinois weapons statute.

11

Here, conversely, defendants have not pointed to any ambiguity,[6] nor do I see any based on the undisputed facts. Plaintiff, as a private detective who was on the job and had attended the required firearms training, fell squarely within the exemption. Further, plaintiff was carrying the card issued to him by the state of Illinois which evidenced the fact that he could lawfully carry a weapon.

There is only one case cited by either side which is factually similar to this case. In *Pritchard v. Hamilton Township Bd. of Trustees*, 424 Fed. Appx. 492 (6th Cir. 2011), plaintiffs brought a § 1983 action against four police officers for claims arising out of defendants' actions in planning and conducting an operation to investigate possible underage alcohol consumption at a party. After police officers arrived at a party at which plaintiff and his father were present, plaintiff was arrested and charged with underage drinking. This charge was eventually dropped against plaintiff because Ohio law permits an underage individual to drink alcohol with a parent's permission on private property. None of the officers present were aware of this exemption to the underage

---

[6]    The only argument defendants make on this point is to say conclusorily that the application of exemption in this case was also ambiguous. They give no explanation or analysis as to how the circumstances of this case could be ambiguous. Their reliance on the fact that other officers did not know about the exemption does not support the notion that the factual scenario was ambiguous, but merely illustrates that multiple police officers were ignorant of the law they were enforcing.

drinking statute. The Sixth Circuit upheld the district court's denial of qualified immunity.

In so holding, the Sixth Circuit first concluded that the law is "clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Pritchard*, 424 Fed. Appx. at 503. It then went on to analyze whether the arresting officer could reasonably have believed that the arrest was lawful. It concluded that a reasonable officer could not have believed that the arrest was lawful. It was undisputed that plaintiff was underage, had consumed alcohol at the party and that plaintiff's father was with him at the party. Noting that police officers may not "simply turn a blind eye toward potentially exculpatory evidence known to them," the court noted that "Defendants certainly could not have ignored the fact that [plaintiff's] father was present and charged [plaintiff] with underage consumption." *Id*. at 504-05. The court concluded that the defendants lacked probable cause because they possessed all of the facts necessary to determine that plaintiff had not violated the plain language of the state underage consumption statute at the time of his arrest.

The court went on to reject the defendants' argument that the defendants were, in fact, missing one additional piece of information – namely, that the state's underage consumption statute

13

exempted plaintiff's behavior. The court framed the question before it as "whether it was reasonable for [defendants] to believe that the arrest of [plaintiff] was lawful in light of the information possessed by the officers and clearly established law." *Id*. at 505. In answering that question "no," the court noted that it was appropriate to impute knowledge of the statute to the police officers, and found "no reason to hold that it would be reasonable for an officer to be ignorant of the very statute he is enforcing." *Id*. at 506. The court also noted that "an ignorance of the law defense – especially when the law is clear – in the qualified immunity context might foster ignorance of the law or, at least, encourage feigned ignorance of the law. Permitting an officer to be ignorant of the law would also draw a stark contrast with our long tradition of imputing knowledge of criminal statutes to the general public." *Id*.

Finally, the court addressed the concern raised by the defendants that it "might seem unduly harsh" to have an expectation that law enforcement officers should know the details of the laws they enforce. But, as the court pointed out, other areas of the law of qualified immunity regularly impute knowledge of statutes and caselaw to officers. *Id*. (citing examples such as imputing knowledge of federal and state court interpretations of a statute to police officers). In light of this, the court found that the facts and circumstances known to the officers established a

14

statutory justification of the suspected criminal act and there was thus no probable cause.

I am persuaded by the Sixth Circuit's reasoning and apply it here to conclude that defendants did not have probable cause to arrest plaintiff. I conclude that, under the facts of this case, it was unreasonable for an officer to be ignorant of the very statute he was enforcing. Defendants rely on cases stating that a police officer need not conduct additional investigation which would exonerate a defendant once probable cause is established. Here, however, no further investigation was required as plaintiff gave the officers all the necessary information and credentials to understand that the requirements of the exemption were met. Because there was no ambiguity here and plaintiff clearly met the requirements of the exemption, I conclude that probable cause was lacking. *See* Pritchard, 424 Fed. Appx. At 503; see *also U.S. v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006) (finding that a police officer's mistake of law cannot support probable cause to conduct a stop even though the officer genuinely believed the defendant had violated the law when he did not turn after engaging signal).

In addition, I reject defendants' claim that they enjoy qualified immunity in this case. According to the United States Supreme Court,

> Government officials performing discretionary functions
> generally are shielded from liability for civil damages
> insofar as their conduct does not violate clearly

15

established statutory or constitutional rights of which a reasonable person would have known.

*See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In an unlawful arrest case in which the defendants raise qualified immunity as a defense, [I] will 'determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed.'" *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). Because qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Saucier v. Katz*, the Supreme Court announced a two-part test for qualified immunity. 533 U.S. 194, 200 (2001). First, I must answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the answer to that question is in the affirmative, I must then decide whether the right is clearly established by determining "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "If the law did not put the officer on notice that his conduct would be

16

clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. at 202. The Supreme Court has since made clear that these questions may be decided in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

It is clear that the right to be free from arrest without probable cause was clearly established at the time plaintiff was arrested in 2009. *See Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) (noting that this right was clearly established by at least 1991). The pressing question, then, is whether a reasonable officer could have believed plaintiff's arrest was lawful, in light of the clearly established right to be free from arrest without probable cause and the information the officers possessed. As explained above, I conclude that any reasonably competent officer would have knowledge of the law he was enforcing. Such an officer would have understood that plaintiff met the contours of the exemption for private detectives. In light of this, I conclude that defendants are not entitled to qualified immunity for the § 1983 false arrest claim. Plaintiff's motion for partial summary judgment on this claim is granted; defendants' motion is denied.

## B. State Law False Arrest

Defendants first argue that plaintiff's state law false arrest claim must fail because the officers had probable cause to arrest plaintiff. Because I have found there was no probable cause to arrest plaintiff, this argument fails. In addition, defendants

argue that the claim is barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-202, which provides, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Willful and wanton conduct is a "course of action which shows an actual or deliberate intention to cause harm which, if not intentional, shows an utter indifference or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Plaintiff did not respond to this argument and thus has presented no evidence that any of the officers acted willfully and wantonly. Nor do I see any evidence that the officers arrested plaintiff willfully or wantonly or out of malice. Thus, with respect to the state false arrest claim, defendants are protected by the Tort Immunity Act. *Neal v. City of Harvey, Ill.*, 1 F. Supp. 2d 849, 857 (N.D. Ill. 1998). Defendants' motion for summary judgment on this claim is granted; plaintiff's motion is denied.

## C. Section 1983: Excessive Force

In Count I, plaintiff alleges that defendants violated § 1983 because they utilized excessive force in violation of his constitutional rights. In response, defendants argue that they are entitled to qualified immunity on this claim.

As described above, to determine whether a defendant is entitled to qualified immunity, I must address two issues:

18

(1) whether the defendant violated the plaintiff's constitutional rights, and (2) whether the right at issue was clearly established at the time of the violation. *Phelan v. Vill. of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008). "The nature and extent of the force that may be used depends upon the circumstances surrounding the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Defendants' primary argument is that the force used against plaintiff was not excessive. In support, they cite to *Stainback*, 569 F.3d at 771, a case in which plaintiff brought an excessive force claim against defendant officers. Once Stainback was arrested, he asked the officers not to handcuff him because he believed he would be hurt if he were handcuffed. The officers grabbed Stainback's arms, quickly pulled his arms behind his back, handcuffed him and performed a pat-down search. While being transported in the back of a squad car, Stainback asked one of the defendants to remove his handcuffs because they were hurting his shoulder. He alleged that he was in handcuffs for fifteen to twenty minutes. Stainback alleged that as a result of the officers' conduct, he suffered two torn rotator cuffs, which required surgery and medical treatment.

19

The Seventh Circuit recognized that "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback*, 569 F.3d at 772. "[W]hether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of the arrest." *Id.* The Seventh Circuit noted "it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain and injury to the particular individual being placed under arrest. For example, an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems." *Id.* Ultimately, the court concluded that the officer's actions were reasonable because the officers were unaware that Stainback suffered from any infirmities, nor did Stainback inform the officers that he had a preexisting condition that would be aggravated if he were handcuffed. The court noted that had Stainback informed the officers of such a condition, the officers would have been obligated to consider that information, together with any other relevant circumstances, in determining whether to handcuff Stainback.

Contrary to the plaintiff in Stainback, plaintiff (taking the facts in the light most favorable to him) in this case did in fact put the defendant officers on notice by telling them on two

20

occasions that the handcuffs were too tight and that he had a preexisting condition – namely, that he had a "bad back" and a "bad hand." Further, it is undisputed that plaintiff was calm, cooperated with the officers and had already been disarmed by the time the handcuffs were placed on him. Defendants make no argument that they had any reason to believe that plaintiff would attempt to flee the scene. And, as required by *Stainback*, plaintiff has put forward evidence of a serious injury and also identified the unreasonable conduct on the part of the officers which caused the injury. 569 F.3d at 773 n.7. A reasonable jury could conclude that the officers' decisions to twice handcuff plaintiff, in light of their knowledge of his preexisting condition and the circumstances of the arrest, were unreasonable under the circumstances. Thus, defendants' motion for summary judgment on the excessive force claim is denied.

**D.  Section 1983 and State Law Conspiracy Claims**

Relying on state law and § 1983, plaintiff also claims that defendants engaged in a conspiracy to damage plaintiff by agreeing to: (1) falsely arrest plaintiff and use excessive force, (2) fail to intervene in the use of excessive force against plaintiff, and (3) generate false documentation to cover-up misconduct. "To establish a prima facie case of civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) actual

21

deprivations of those rights in the form of overt acts in furtherance of the agreement." *Washington v. Amatore*, 781 F. Supp. 2d 718, 720 (N.D. Ill. 2011). "To prove a conspiracy to deprive him of his constitutional rights, the plaintiff must show that the parties directed themselves toward an unconstitutional action by virtue of a mutual understanding, and that they had a 'meeting of the minds.'" *Id*.

Plaintiff alleges that the arrest and use of handcuffs were part of a conspiracy on the part of all the defendant officers. The record does not support this assertion. There is only plaintiff's supposition that the officers took action against him because his job as a process server was taking employment away from the sheriff's office. Plaintiff points to the fact that the defendants used their cell phones (which could not be recorded) instead of the police radios (which were recorded) as evidence of a conspiracy. Further, he alleges that the fact that he received an edited copy of the police audio recording must mean that the defendants are attempting to cover up their conspiracy. This type of supposition is not evidence sufficient to warrant a trial on this claim. Plaintiff offers no evidence, either overt or otherwise, of any agreement between the officers which would support a "meeting of the minds." Defendants are therefore entitled to summary judgment on the § 1983 conspiracy count as well

as the state law conspiracy count.[7]  Their motion on these counts
is granted.

**E.   Section 1983: Seizure of property**

The only argument defendants make with respect to the seizure
of property claim is that it fails because there was probable cause
to arrest plaintiff.  Because there was no probable cause to arrest
plaintiff, their motion on this count is denied.

### III.

As explained more fully herein, plaintiff's motion for partial
summary judgment on his false arrest claim on liability [62] is
granted.  Likewise, defendant's motion for summary judgment [66] on
plaintiff's state law false arrest claim is granted.  Both parties'
motions for summary judgement are otherwise denied.

**ENTER ORDER:**


_____
Elaine E. Bucklo
United States District Judge


Dated:    November 29, 2011

---

[7]  The state law conspiracy claim also requires an agreement
between two or more persons.  *Martinez v. Freedom Mortgage Team,
Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007).