**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT RABIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 8049 |
| v. | ) | |
| | ) | |
| COOK COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM, OPINION, AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Scott Rabin has moved to exclude the expert testimony of Dr. Michael Zindrick pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In the alternative, Plaintiff moves to bar Dr. Zindrick's testimony as a discovery sanction based on Defendants' alleged failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B). For the reasons discussed below, the Court denies Plaintiff's motion.

## FACTUAL BACKGROUND

On December 14, 2009, Plaintiff Scott Rabin, a licensed private investigator, was serving a court order on a registered corporate agent in Buffalo Grove, Illinois. At that time, Cook County Sheriff's Deputy Michael Flynn was also serving process and saw that Rabin was wearing a holstered gun. Deputy Flynn stopped Rabin and asked him if he had a gun, after which Rabin stated yes, explained that he was a licensed private investigator, and presented a carrying license or "tan card," also known as a "firearm control card." *See* 225 ILCS 447/35–35. Because Deputy Flynn did not know what a tan card was, he confiscated Rabin's gun and made a

call to his dispatcher asking him to run the tan card through the Law Enforcement Agencies Data System ("LEADS"). The dispatcher explained that he could not verify the card through LEADS, that the tan card "might be a concealed carry card," and that the dispatcher would call the "Springfield desk." Deputy Flynn called back to see if Springfield knew anything about the tan card and the dispatcher told him that it did not.

Defendant Deputy Sheriff Todd Knepper, who had heard on the radio that Deputy Flynn was with an armed man, arrived on the scene, confirmed that Rabin was the person who was armed, and then handcuffed Rabin. At that time, Rabin repeated to Deputy Flynn and Defendant Deputy Knepper that he was authorized to carry the gun, but Deputy Knepper was also unaware of what a tan card was. After Deputy Knepper handcuffed him, Rabin told the deputies that his handcuffs were tight. Another Sheriff's deputy then removed Deputy Knepper's handcuffs and placed other handcuffs on Rabin to transport him to the police station. Rabin then asked Deputy Knepper whether he had to be handcuffed because he had a "bad neck" and a "bad hand in the past." Further, Rabin told Deputy Knepper that the second set of handcuffs was even tighter than the first. The deputies detained Rabin for approximately an hour and a half before they confirmed that he could lawfully carry his gun. At issue in this lawsuit is Rabin's Fourth Amendment excessive force claim against the remaining individual Defendant, Deputy Knepper, based on his overly tight handcuffs that he alleges exacerbated his preexisting medical conditions.

On January 28, 2014, Defendants disclosed Dr. Michael Zindrick, an orthopedic surgeon, as a medical expert. Dr. Zindrick is the Clinical Director of the Edward Hines, Jr. VA Hospital and Adventist Hinsdale Hospital Spinal Surgery and Research Fellowship Program. In 1979, Dr.

Zindrick received his medical degree from Loyola University of Chicago Stritch School of Medicine, where he is a clinical professor of orthopaedic surgery. He is board certified in orthopaedic and spinal surgery, is certified as an independent medical examiner, and is currently a member of the Medical Journal Review Board, specifically serving as a Board of Advisory Editor. Over the last thirty years, litigants have retained Dr. Zindrick as an independent medical expert in worker's compensation, personal injury, medical malpractice, and law enforcement cases. Dr. Zindrick offers three opinions related to Rabin's medical conditions.

First, as to Rabin's left hand, Dr. Zindrick opines that Rabin "at the very most sustained a temporary neuropraxia of the median nerve and superficial branch of the radial nerve and possible reactivation of his complex regional pain syndrome to his left hand on December 14, 2009." (R. 195-1, Zindrick Rep., at 7.) He further posits that "[t]his was a temporary injury and was resolved within 6-12 weeks of the event" and that Rabin "did not sustain any permanent injury as a result of this incident." (*Id*.) Dr. Zindrick's second opinion regarding Rabin's neck states that absent the December 2009 incident, the clinical course and outcome of Rabin's "pre-existing cervical degenerative disc disease and episodes of intermittent cervical radiculopathy" would have been similar. (*Id*). In his third opinion, Dr. Zindrick opines that Rabin's right shoulder bursitis was unrelated to the December 14, 2009, incident. (*Id*. at 9.)

## LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). Rule 702 "requires that the trial judge ensure that

any and all expert testimony or evidence admitted 'is not only relevant, but reliable.'" *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) (citation omitted); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *See Manpower, Inc.*, 732 F.3d at 806 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147-49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

In performing this gatekeeping function, district courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013). A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id*. (citation omitted).

A district court's inquiry under Rule 702 and *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Lees*, 714 F.3d at 521; *Bielskis*,

4

663 F.3d at 894. Although appellate courts review whether district courts properly apply the *Daubert* framework de novo, the ultimate decision whether to admit expert testimony is within the district court's sound discretion. *See Stuhlmacher v. Home Depot U.S.A., Inc.,* 774 F.3d 405, 409 (7th Cir. 2014).

## ANALYSIS

**I.  Daubert and Federal Rule of Evidence 702**

In the present motion, Rabin does not challenge Dr. Zindrick's qualifications, admitting that Dr. Zindrick bases his opinions on years of experience as a medical professional, nor does he argue that Dr. Zindrick's opinions are not relevant. Instead, Rabin argues that "he offers only bottom lines without identifying methodologies or principles that led him to those bottom lines." Rabin further contends that Dr. Zindrick never disclosed what material he reviewed in forming his opinions.

An expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline." *Bielskis,* 663 F.3d at 894. Here, the relevant discipline is clinical medicine (as opposed to laboratory or research medical science). "[I]n clinical medicine, the methodology of physical examination and self-reported medical history ... is generally appropriate." *Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1020 (7th Cir. 2000). Moreover, the Seventh Circuit has held that evaluating a patient's medical records alone–without performing a physical examination–is a reliable method to use when developing an expert opinion. *See Walker v. Soo Line R. Co.,* 208 F.3d 581, 591 (7th Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 762 (3d Cir. 1994)); *see, e.g., Gayton v. McCoy,* 593 F.3d 610, 618 (7th Cir. 2010); *Casares v. Bernal,* 790 F.Supp.2d 769, 783 (N.D. Ill. 2011). As such,

5

Dr. Zindrick's reliance on Rabin's medical records was a reliable methodology that Dr. Zindrick used in forming his opinion. *See Erickson v. Baxter Healthcare, Inc.*, 131 F.Supp.2d 995, 1001 (N.D. Ill. 2001) ("part of what physicians do is evaluate medical records and form opinions").

In his report, Dr. Zindrick lists Rabin's medical records and reports upon which he relied in forming his medical opinions, including the records of four separate medical doctors, Rehabilitation Institute of Chicago records, Evanston Hospital's Physical Medicine and Rehabilitation medical records, an MRI report from Libertyville Imaging Center, Lake Forest Hospital medical records, an MRI report from Lake County Imaging, and medical records from the Illinois Bone and Joint Institute. Dr. Zindrick also considered the December 14, 2009, incident report and deposition transcripts of Rabin, Defendant Deputy Knepper, Deputy Flynn, and Dr. Jonathan Citow, Rabin's neurosurgeon and expert witness. Accordingly, Rabin's argument that Dr. Zindrick did not disclose what material he reviewed and examined in forming his opinions is misplaced.[1] In addition, although Rabin does not presently challenge the actual data, namely, his medical records and reports upon which Dr. Zindrick relied, it is well-settled that "the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation." *Gayton,* 593 F.3d at 619; *see also Manpower, Inc.*, 732 F.3d at 806 (challenge to expert's reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.").

---

[1] The Court notes that at Dr. Zindrick's November 18, 2014, deposition, Plaintiff's counsel asked the following question: "Obviously you reviewed a lot of medical records related to the client in this case, Scott Rabin, correct?" (R. 195-2, Zindrick Dep., at 8.) Dr. Zindrick answered: "That's correct." (*Id.*)

Next, Rabin argues that Dr. Zindrick's opinions are "ipse dixit," namely, that he merely supplied a "bottom line." *See General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."). The Court therefore turns to whether a connection exists between Rabin's medical records and Dr. Zindrick's opinions. *See Manpower, Inc.,* 732, F.3d at 807 ("The critical inquiry is whether there is a connection between the data employed and the opinion offered."); *see, e.g., Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761-62 (7th Cir. 2010).

In his first opinion regarding Rabin's left hand, Dr. Zindrick stated that Rabin "at the very most sustained a temporary neuropraxia of the median nerve and superficial branch of the radial nerve and possible reactivation of his complex regional pain syndrome to his left hand on December 14, 2009." (R. 195-1, Dr. Zindrick Rep., at 7.) He further opined that "[t]his was a temporary injury and was resolved within 6-12 weeks of the event. He did not sustain any permanent injury as a result of this incident." (*Id.*) In forming this opinion, Dr. Zindrick relied on Rabin's medical records, such as Dr. Daniel Nagle's report of Rabin's December 23, 2009, office visit, which indicates that Dr. Nagle recommended vitamin B6 and concluded that recovery was expected with the passage of time. (*Id.*) Dr. Zindrick discusses Dr. Nagle's evaluations of Rabin in detail, including Dr. Nagle's earlier evaluations regarding the history of Rabin's prior left hand injury starting in 2003. (*Id.*, at 2, 5-7.)

Dr. Zindrick's second opinion concerns Rabin's neck and states that absent the December 2009 incident, the clinical course and outcome of Rabin's "pre-existing cervical degenerative disc disease and episodes of intermittent cervical radiculopathy" would have been similar. (*Id.*)

7

Dr. Zindrick notes that Rabin's and the occurrence witnesses' deposition testimony did not indicate that any neck injury occurred on the day of the incident. (*Id*.) Dr. Zindrick also based his opinion on Dr. Nagle's December 23, 2009, report of Rabin's office visit, at which Rabin did not complain about his neck. (*Id*.) Further, Dr. Zindrick opined that had the December 14, 2009, incident aggravated Rabin's pre-existing cervical degenerate disc disease, symptoms should have appeared immediately. (*Id*. at 8.) In addition, Dr. Zindrick observed that the first report of neck pain and right shoulder pain occurred in an MRI report from January 29, 2010. (*Id.*) Dr. Zindrick noted that after Dr. Citow reviewed the January 2010 MRI, he stated "there is mild bulging of C5-6 but not significant pathology." (*Id*.) Dr. Zindrick further clarified that there was a treatment gap of over three months before complaints of right shoulder pain and neck pain were clinically evaluated and reflected on the medical record, and that on May 10, 2010, Rabin saw Dr. Mark Breslow at the Illinois Bone and Join Institute. (*Id*.) At that time, Dr. Breslow found Rabin "to have painless range of motion of his neck and normal motor, sensory and reflect exam of the upper extremities" and that Rabin's "symptoms were primarily localized to his right shoulder and a diagnosis of right rotator cuff tendinitis." (*Id*.) Again, Dr. Zindrick discusses the history of Rabin's cervical degenerative disc disease and episodes of intermittent cervical radiculopathy in forming his opinion. (*Id*. at 5-6.)

In his third and final opinion, Dr. Zindrick states that Rabin's right shoulder bursitis was unrelated to the December 2009 incident. (*Id.* at 9.) Dr. Zindrick relies on Rabin's December 2009 office visit, at which time he did not complain to Dr. Nagle about his shoulder, and reiterates that the "first time shoulder complaints show up in the medical record was at the time of the cervical MRI scan on 1/29/2010." (*Id*.) Also, Dr. Zindrick considered Rabin's history of

8

mild bursitis and acromioclavicular osteoarthritis in forming this opinion, as well as Dr. Breslow's reports of Rabin's office visits in 2010. (*Id.* at 2-3, 6.) In addition, Dr. Zindrick discussed his reasoning regarding Rabin's right shoulder symptoms in tandem with Rabin's neck symptoms, as detailed immediately above.

In sum, Dr. Zindrick has provided a rational connection between the medical records with his reasoned opinions. *See Manpower, Inc.*, 732 F.3d at 809; *Bielskis*, 663 F.3d at 894. Moreover, whether Dr. Zindrick's opinions are credible is a question for the jury. *See Stuhlmacher*, 774 F.3d at 409. Therefore, Rabin's argument that Dr. Zindrick just supplied a "bottom line" is without merit. The Court thus denies Rabin's *Daubert* motion to exclude Dr. Zindrick's expert testimony.

## II. Federal Rule of Civil Procedure 26(a)(2)(B)

In the alternative, Rabin asserts that the Court should bar Dr. Zindrick's testimony as a discovery sanction because Defendants' Rule 26(a)(2)(B) disclosure and Dr. Zindrick's attendant written report are materially deficient. He claims the disclosures and report failed to disclose Dr. Zindrick's methodology and underlying data. As the Seventh Circuit instructs, "Federal Rule of Civil Procedure 26(a)(2) requires parties to timely disclose their expert witnesses in accordance with any deadlines set by the district court" and "further requires parties to disclose a written report prepared and signed by the witness." *Novak v. Board of Trs. of So. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015) (internal quotations omitted). The written report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B). "Failure to comply with the disclosure requirements of Rule 26(a) results in automatic and mandatory exclusion of the proffered witness 'unless the failure was substantially justified or is harmless.'" *Novak,* 777 F.3d at 972 (quoting Fed.R.Civ.P. 37(c)(1)). Courts look to several factors when deciding if non-compliance with Rule 26(a) is harmless, including prejudice or surprise, the ability to cure the prejudice, the likelihood of disruption at trial, and bad faith or willfulness. *See Tribble v. Evangelides,* 670 F.3d 753, 760 (7th Cir. 2012). District courts have broad discretion in evaluating whether a Rule 26(a) violation is substantially justified or harmless. *See Alexander v. Mount Sinai Hosp. Med. Ctr.,* 484 F.3d 889, 901-02 (7th Cir. 2007); *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003).

As discussed, Dr. Zindrick's report contained a complete statement of his opinions and reasoning, along with the facts and data Dr. Zindrick considered in forming his opinions. At his deposition, Dr. Zindrick explained that he has testified as an expert witness in hundreds of worker's compensation, personal injury, and medical malpractice cases. He also explained that he served as an expert in a handful of cases involving law enforcement officials and gave specific details about one case in which he "sided" with the plaintiff's allegations. Dr. Zindrick further explained his fee schedule for record review, report preparation, and testimony.

Despite the detailed information disclosed in Dr. Zindrick's report and at his deposition, Rabin maintains that Defendants have failed to establish that the failure to properly disclose

information was harmless. In particular, Rabin argues that he suffered prejudiced because–due to the deficiencies–his counsel could not perform a thorough examination of Dr. Zindrick at his November 2014 deposition. After reviewing Dr. Zindrick's deposition transcript, the Court would be hard-pressed to conclude that Rabin's counsel did not perform a thorough examination of Dr. Zindrick. Counsel asked numerous questions about the bases of Dr. Zindrick's opinions delving into inconsistencies and the overall medical record. Furthermore, counsel asked Dr. Zindrick questions about Dr. Citow's expert opinions and their bases, pointing to the discrepancies in Dr. Zindrick's opinions.

Next, in his reply brief, Rabin takes issue with Defendants' response that the deficiencies of which Rabin complains were cured by Dr. Zindrick's deposition testimony. Rabin's argument, however, fails to recognize that in determining if non-disclosure is harmless, courts look to whether any alleged prejudiced is curable. *See Tribble*, 670 F.3d at 760; *David,* 324 F.3d at 857. Here, Dr. Zindrick's deposition testimony provides additional facts as required by Rule 26(a)(2)(B), including information about Dr. Zindrick's opinions in prior law enforcement cases.

Finally, there is no evidence of any bad faith or willfulness on the part of Defendants nor that non-compliance is likely to disrupt trial. *See Tribble*, 670 F.3d at 760. As such, Defendants' omissions in the Rule 26(a) disclosures are harmless. *See Jenkins v. Bartlett*, 487 F.3d 482, 488 (7th Cir. 2007). Therefore, the Court, in its discretion, denies Rabin's motion to exclude Dr. Zindrick's expert opinion as a discovery sanction.

On a final note, the Court grants Rabin's motion to bar Dr. Zindrick from giving any opinions that were not disclosed in his report as unopposed. Similarly, the Court grants Rabin's motion barring Defendants from arguing that defense experts were not allowed to medically

information was harmless. In particular, Rabin argues that he suffered prejudiced because–due to the deficiencies–his counsel could not perform a thorough examination of Dr. Zindrick at his November 2014 deposition. After reviewing Dr. Zindrick's deposition transcript, the Court would be hard-pressed to conclude that Rabin's counsel did not perform a thorough examination of Dr. Zindrick. Counsel asked numerous questions about the bases of Dr. Zindrick's opinions delving into inconsistencies and the overall medical record. Furthermore, counsel asked Dr. Zindrick questions about Dr. Citow's expert opinions and their bases, pointing to the discrepancies in Dr. Zindrick's opinions.

Next, in his reply brief, Rabin takes issue with Defendants' response that the deficiencies of which Rabin complains were cured by Dr. Zindrick's deposition testimony. Rabin's argument, however, fails to recognize that in determining if non-disclosure is harmless, courts look to whether any alleged prejudiced is curable. *See Tribble*, 670 F.3d at 760; *David,* 324 F.3d at 857. Here, Dr. Zindrick's deposition testimony provides additional facts as required by Rule 26(a)(2)(B), including information about Dr. Zindrick's opinions in prior law enforcement cases.

Finally, there is no evidence of any bad faith or willfulness on the part of Defendants nor that non-compliance is likely to disrupt trial. *See Tribble*, 670 F.3d at 760. As such, Defendants' omissions in the Rule 26(a) disclosures are harmless. *See Jenkins v. Bartlett*, 487 F.3d 482, 488 (7th Cir. 2007). Therefore, the Court, in its discretion, denies Rabin's motion to exclude Dr. Zindrick's expert opinion as a discovery sanction.

On a final note, the Court grants Rabin's motion to bar Dr. Zindrick from giving any opinions that were not disclosed in his report as unopposed. Similarly, the Court grants Rabin's motion barring Defendants from arguing that defense experts were not allowed to medically

examine him as unopposed.

## CONCLUSION

For these reasons, the Court denies Plaintiff's *Daubert* motion and alternative motion brought pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

**Dated:** April 27, 2015

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**